## Case No. 6,780.

HOWELL v. HARTFORD FIRE INS. CO.

[3 Ins. Law J. 649.]

Circuit Court, N. D. Illinois. Sept., 1874.

FIRE INSURANCE — WARRANTY — EXECUTORY UNDERTAKING—FRAUD—PROOF THEREOF—PREPONDERANCE OF EVIDENCE — TESTIMONY OF ACCOMPLICES.

1. The application stated that there was being constructed a force pump, etc. It was dated on the 25th of May, and the fire occurred on the 3d of October the same year. Held, that this was not a warranty on the part of the plaintiff, but only an executory undertaking, and the defendant could have protected itself by rescinding the contract after making a demand on the plaintiff to have the pump put in working order, and, no demand having been made, there was no breach of warranty. Held, that where the policy contains this clause, "All fraud or attempt at fraud on the part of the assured shall cause a forfeiture of all claims under this policy," the question of fraud is to be decided by a preponderance of evidence, and the rule in civil cases is to be followed.

2. The charge that the plaintiff burned or caused to be burned the property insured, must be satisfactorily proved, and though not so as to exclude all reasonable doubt, yet the weight of evidence must be in favor of the defendant, to vitiate the policy.

3. In weighing the testimony of parties who state that they were accomplices of the plaintiff in the alleged arson, the jury should consider the motives they may have had in falsely charging the plaintiff with the crime, whether their statements are consistent and true, whether it agrees with the statements of other witnesses, and whether the character of these witnesses is such that they would be fit instruments for such a crime.

4. The evidence of these accomplices must be supported by extrinsic facts and circumstances.

5. Any proof of fraud in the valuation of the property insured would vitiate the policy.

[Cited in Shaw v. Scottish Commercial Ins. Co., 1 Fed. 765.]

6. The offer of counsel to allow the jury to examine a hotel register by means of a micro-scope during the argument was made too late, and should have been made before the evidence was all in.

At law.

BLODGETT, District Judge (charging jury). The plaintiff in this case seeks to recover upon a policy of insurance issued by the defendant, bearing date the 15th of June, 1869, countersigned by the defendant's local agent on the 26th of August, 1869, whereby the defendant insured the paper-hangings manufactory of the plaintiff, situated at Marseilles, in this state, against damage by fire to the amount of five thousand dollars, for the term of one year from the date of said policy. To sustain this claim the plaintiff, in opening, proved the issue of the policy; the fact that his building was burned on the 3d of October, 1869, during the lifetime of the policy; that the loss was total; and that he had at that time furnished the defendant the notice and proofs of loss required by the terms of the policy, and claiming that this evidence made out a prima facie right to recover, and the plaintiff rested. By way of answer to the case thus made out by the plaintiff, the defendant contends: First. That the plaintiff applied for the policy in question upon the property in question by a written application dated the 25th day of May, 1869, which application is, by the terms of the policy, made part thereof, or is made a warranty; that the plaintiff had violated the terms of his warranty in not putting a force pump into the building within a reasonable time after the application was made; and that by reason of such violation of his warranty the policy had become and was avoided at the time of the alleged loss. Second. That the plaintiff had procured policies of insurance upon the building and contents to the aggregate amount of about ninety thousand dollars, which, in the whole, exceeded the value of the property, and then caused the building and contents to be burned, with the intent thereby to defraud the defendant and the other insurance companies who had issued policies upon the property.

By the first point the defendant raises a question of law in regard to the plaintiff's right to recover. But the policy refers in express terms to the application therefor which had been made by the plaintiff, and declares said application to be a part of this policy and a warranty on the part of the insured. By reference to the application, which has been produced in evidence, it appears that among other questions in the application to be answered by the assured is the following: "Q. 25. Is there a force pump upon the premises expressly for the purpose of putting out fire, and is it a good pump, and at all times ready for immediate use?" To which plaintiff replied in writing, opposite the question: "One constructing to flood every floor by open cocks and power applied outside of the building, in constant use for

pumping water for washing purposes." It is one of the admitted facts in this case that, at the time of the fire which destroyed the building, no force pump had been put in, and no vertical pipe for conducting the water from the pump to the various stores, nor lateral pipes in each story to distribute the water through them, and upon these facts the defendant insists that the plaintiff cannot recover, because the statement, in the application in regard to the force pump, is a warranty or covenant that said pump shall be constructed within a reasonable time, and inasmuch as the application is dated the 25th of May, 1869, and the fire occurred on the 3d of October, over four months afterward, and as the defendant's affirmative proof tends to show that the pump could have been put in place within a very short space of time, therefore more than a reasonable time had elapsed, and the policy had become void by reason of this breach of warranty.

Without taking time to discuss at length the position of the learned counsel for the defendant in this case on this point, it will be sufficient for me to say that I find no words in the policy or application which expressly or by implication restrict the policy from taking effect until the force pump is completed. The language of the application, when question and answer are taken together, is that a force pump is in process of construction, which will flood every floor. He does not say there is a force pump there already, which would amount to a warranty of the fact, but says one is constructing, and there is no language which indicates an intention that the policy was not to be operative until the pump was constructed. I think, therefore, and so instruct you, that the policy was not suspended nor prevented from becoming operative by the delay in constructing the force pump, even beyond a reasonable time. It may be that the true construction of the clause of the application requires the plaintiff to put in the pump and pipes for flooding the building, as described, within a reasonable time, as is contended by the defendant, but I think, if the contract of insurance once took effect and became operative, the defendant could not avoid it by the plaintiff's delay in putting in his pump, without first making a demand upon the plaintiff to comply with this part of his undertaking, and giving notice that the contract would be rescinded if he did not so comply. This part of the plaintiff's undertaking was executory, to be performed within a reasonable time; but what is a reasonable time is a question of fact to be controlled by the circumstances shown by the proof, and, if the delay was unreasonable, the defendant could at any time protect itself by notice or demand of compliance with this clause, and by rescinding the contract if the plaintiff refused to comply by putting in the pump; or the defendant might have exercised its reserved right, cancelling the policy under the cancellation clause in the policy itself. To illustrate: This same application contains a question as to whether there are lightning rods on the building, and the answer is, "We will erect rods soon, no rod at present." Now this would be taken, it seems to me, merely as a promise that the plaintiff will put up lightning rods at some future day, and even if the building had been burned by a stroke of lightning, for want of a rod, it could not avoid the policy, if the defendant acquiesced in the delay in putting up the rod. If the plaintiff had stated that the pump was already put into the building, or a lightning rod erected, such statements would have been a warranty, and, unless waived by the company, would have avoided the policy, if not true, even if the loss had not happened by reason of the breach of such warranty. This proposition I deem sound in law, but not applicable to this case, because the undertaking of the plaintiff is to construct a pump, and not that one is already constructed. This policy shows upon its face that it was not to become binding until countersigned by the defendant's agents at Marseilles, and that it was not so countersigned until August 26th, from which time it seems to me the delay must not be deemed to have been unreasonable; but that is a question of fact for you to pass upon, as to whether it was reasonable or unreasonable, if such a question of fact were submitted to you. I therefore charge you that no demand being shown by the proof for the construction of the pump by any specified time, and no steps taken to avoid the policy by reason of the delay in putting up the pump, the policy must be considered as in full force at the time of the fire, notwithstanding the plaintiff's delay in the construction of the force pump.

I now refer to a point in which I deem it the province of the court to instruct you, touching the main question raised by the defense, and, in the outset, I will say that the defendant, on this branch of the case, has the laboring oar. The plaintiff, by the production of the policy showing the undertaking of the defendant, and his proof showing the fact of his loss, and its extent, and his compliance with the prerequisites of the policy, has made out a prima facie case. The defendant has undertaken to show that the plaintiff, for the purpose of defrauding the defendant and the other insurance companies who had issued policies on the contents of the building, has caused the building to be set on fire. The policy in question contains the following clause: "All fraud or attempt at fraud on the part of the assured shall cause a forfeiture of all claims under this policy." So that without invoking any general principles of law as to what would be the legal effect of such acts of fraud on the part of the assured, in absence of a special clause on the subject, the express terms of the contract in this case make all claims

under the policy void if the assured has been guilty of any fraud or attempt at fraud in connection with the alleged loss; that is, if the loss had been brought about by his fraudulent or criminal act. The clause quoted is undoubtedly capable of a wider application than is sought in this case, because if the assured is guilty of fraud in the proofs of loss, thereby attempting to recover or collect more than the actual loss chargeable against the insurer, he has forfeited his claim. But this further application does not arise in this case, because it is not insisted that the plaintiff has attempted any over-valuation of the building covered by the defendant's special policy, this policy being upon the building alone, and not upon its contents. In criminal cases, where the defendant is on trial for an offense of the kind here charged, the rule is that the guilt of the accused must be made out beyond a reasonable doubt, but in civil cases the rule is different. The case is to be decided upon the weight or preponderance of evidence, and the court charges you that it is not necessary that the degree of proof be the same as in this case as if the plaintiff was on trial under an indictment for wilfully burning or procuring the burning, of the property insured, for the purpose of defrauding the insurance companies. On the contrary, as between the rule in criminal cases and the rule in civil cases, as it is defined, it is the rule in the civil cases that is to be your guide. But the charge against the plaintiff is too grave a one,—the charge is one which men in general will not commit, but of which men are sometimes guilty, —in view of which the court instructs you that, in order to justify you in finding that the plaintiff himself burned or caused the property to be burned, the legal evidence, taken altogether, must be such as to clearly satisfy you of the truth of the proposition. It need not be such as to exclude all reasonable doubt, but there should be a clear preponderance in favor of the defendant, so that your minds and judgments are satisfied that the plaintiff did, or procured the doing of, the incendiary act. I may with propriety say here that both parties have tried or discussed this case upon the assumption that the fire was the work of an incendiary. The real question in dispute throughout this tedious trial has been, was the plaintiff privy to this burning? did he employ the persons who say they committed this act? is there any motive shown for any person to have done it, and does the proof show that he procured the act to be done? The evidence by which the defendant seeks to establish the issue on its part, is, first, the direct testimony of two witnesses, Morris D. Smith and Felix Seigler, tending to show that they, or one of them, set the building in question on fire, at the instance and by the procurement of Howell, the plaintiff. Second, evidence or facts and circumstances tending to corroborate the testimony of Smith and Seigler, and their evidence, tending to show that the plaintiff submitted to the defendant and the other insurance companies who had issued policies on the property contained in the building, exaggerated and fraudulent statements to prove the value of the property so destroyed.

With regard to the first class of evidence, —that of Smith and Seigler, tending directly to show that the building was fired by the plaintiff's procurement,—I have to say, that by their own statements they were accomplices with the plaintiff in the commission of the alleged crime, and their testimony is to be received with the utmost caution, and the jury ought not to find for the defendant upon their testimony, unless corroborated in material facts, or, in other words, their evidence should be so corroborated by extrinsic facts and circumstances as to satisfy your minds that these men have substantially sworn to the truth. In weighing and deciding upon the testimony of these men, you should carefully consider: First, what motives they had, or could they have, for falsely charging the plaintiff with the crime. Second, are their statements consistent and coherent, and do they, when taken together, impress you with the conviction of their truth in material particulars? Third, do their statements cohere and agree with the material facts admitted in the case already proven by witnesses worthy of belief? Fourth, the character of the men as fit instruments for such a crime, and the plaintiff's knowledge of them as such, so far as shown by the proof, and also the probability that they may have been suborned, and committed perjury for the purposes of the defense. You should also consider, in connection with the testimony of these men, the facts and circumstances shown by the evidence, which tend to corroborate and support their statements. Much of the evidence in the case has but slight, if any, significance, except as it tends to corroborate or overturn the evidence of these two men; but, for that purpose, most of it is worthy of careful consideration and critical comparison and analysis. I have already told you that you should not believe these witnesses, Smith and Seigler, unless they are corroborated. I will further say that you are to look for such corroboration to the outside testimony, and not for one to sustain the other. They must be sustained by extrinsic facts and circumstances. To make myself more clear, it will not do to say that you must believe Smith because he is sustained by Seigler, or that you must believe Seigler because he is sustained and corroborated by Smith, but, if either one of them is sufficiently corroborated by other testimony to satisfy you that he has testified to the truth, then you will be justified in believing him; but they cannot sustain each other, only so far as their respective stories com-

mend themselves to your understanding from their inherent probability and consistency.

Prominent among the corroborating circumstances insisted upon by the defendant is the evidence tending to prove the suspicious conduct of the plaintiff both before and after the fire; his frequent visits to and interviews with these men; the arrest of Seigler, and his hearing and trial before the magistrate Lockwood; his obtaining the affidavits, or attempting to obtain them, charging various persons with having knowledge of the burning of the building; his payment of Seigler's attorney's fees upon his hearing, and providing for bail if he should be held to bail, and also providing witnesses for him in regard to his character, and suggesting the importance of calling such witnesses; his writing letters over fictitious signatures; his meeting with Smith, apparently on terms of confidence, at times when he was charging him with the crime of burning his building, and associating with Smith, apparently upon confidential terms, while thus charging him; his taking Seigler away, and keeping him for a long time under his control and influence, in a distant state; all these circumstances, the defendant insisted, tend to show the consciousness of guilt on the part of the plaintiff, and are only explained consistently upon the theory that he was guilty as charged. I will here say that it is not my province to even say that these circumstances are proven; it is for you to weigh and pass upon all this proof, and decide whether it really establishes the fact it tends to prove or establish. But if these circumstances are proved by the evidence to your satisfaction, it will then be for you to determine how far they corroborate the statement of Smith and Seigler, or either of them, and how far they tend to show the guilt of the plaintiff, even without Smith's and Seigler's testimony.

In the same connection you should also consider the testimony in regard to the value of the property destroyed. The defendant's policy was upon the building alone, but much of the testimony adduced by the defendant bears upon the value of the machinery and property contained in the building. This testimony is mainly material upon this trial, because if true, it tends to develop a motive on the part of the plaintiff to secure the burning of his property. If his property in the building was not in fact worth over $25,000 or $30,000, as the proof tends to show, while it was insured for over $80,000, the motive for the commission of the alleged crime is developed, or rather a motive which might lead to commit such a crime, according to our common experience and knowledge of human nature. The evidence in regard to the overvaluation is conflicting and contradictory in many particulars, and, it is for you to reconcile these where such a result is possible, and where you cannot reconcile or harmonize

them, it is for you to say which you will believe. In weighing or canvassing this testimony, you should consider the intelligence of the witnesses on the subject when they respectively testified to their experience and knowledge, and above all the motives which may have influenced or controlled them. If from all the evidence produced upon this point you are satisfied that the plaintiff attempted to obtain an over-valuation of this property to secure a payment from these insurance companies on the basis of such overvaluation, such fact, if established, should be deemed a pregnant circumstance tending to establish the defense. And here it is but right that I should say a word in regard to the necessity of holding the assured to strict truthfulness in his proofs of loss. The nature of the insurance business is such that companies cannot know at the time they issue their policies the exact value of the property insured, especially goods or personal property. A business man asks for a certain amount of insurance on his goods in his store, warehouse, or factory. The fact that he pays premiums in proportion to the amount insured is supposed, in the case of most men, to be a guarantee that he has property of the value insured; but in proofs of loss the amount to be paid is to be fixed at the value of the property destroyed, so that it is the amount on hand at the time of the fire that becomes material. This can only be known with any degree of certainty through the assured himself. He is therefore held to a strict and truthful statement as to the value of the property destroyed, and any intentional over-valuation, or any such valuation as displays a reckless and dishonest disregard of the truth, in regard to the extent of the loss, is deemed fraudulent and causes forfeiture of all claims under the policy. I do not mean to say that a mere difference of opinion in regard to the value of the property destroyed would alone be such a fraud as would defeat the claim, because men may honestly differ in regard to the value of a particular piece of property, but there must be such an over-estimate as shows a manifest design to defraud.

To rebut this evidence introduced on the part of the defendant, the plaintiff has offered evidence which may be classed as follows: First, evidence tending to contradict the defendant's proof, both as to the main facts and the corroborating circumstances. Second, evidence tending to discredit or impeach the witnesses introduced by the defendant. And this impeaching testimony may be aptly divided into two classes: First, evidence tending to show that some of defendant's witnesses are unworthy of belief, by reason of their bad reputation for truth and veracity. I think in this case there has been testimony introduced on this trial in regard to the bad reputation of but one of the defendant's witnesses,—that is, Smith,—and none in regard to Seigler. Second, evidence tending to

show that the witnesses have on other occasions, either under oath or without oath, made different statements of the transactions to which they testify, to that which they now testified on this trial. The law devolves upon you the duty of weighing, reconciling, and sifting all this contradictory and impeaching evidence; you are to pass upon the credibility of the various witnesses whose testimony is adduced, and determine the credit you will give to their respective statements. In doing this the motive and degree of intelligence of the witnesses should be carefully considered by you. In regard to the impeaching witnesses, the bad reputation of a witness for truth.and veracity, no matter how bad it may be proved to be, does not necessarily require you to reject or disbelieve his testimony, if, from all the evidence in the case, you are still satisfied that he has sworn to the truth on this trial, because very bad men, and very great liars, may tell the truth, but it is for you to say whether they have done so on this trial. The evidence of bad reputation should be considered rather as a notice or caution, not to implicitly believe the witness, and calling upon you to scrutinize the testimony in the light of the fact that it comes from an impure source, and only to believe it when you are satisfied it is true from all the evidence adduced in the case.

In regard to the evidence which seeks to impeach the witnesses by showing that they have at other times stated and sworn differently from what they have testified on this trial, I will say, this evidence goes to the credibility of the witnesses, and it is for you to say whether, from all the circumstances and explanations in regard to the conflicting statements, it is probable they have told you the truth on this trial. The former statements may have been untrue, and the evidence delivered to you may have been the truth, or vice versa, or all may be false,—this is for you to consider and to determine from all the proof in the case. You should carefully weigh and canvass all the circumstances and influences under which the conflicting statements were made, and decide for yourselves which, if either, is true. You are not compelled to reject the evidence of the witnesses, although the contradictions are still admissible and entitled to consideration. During the progress of this trial the plaintiff has himself been upon the witness stand, not only to deny the charges of defendant's witnesses, but also to explain some of the circumstances, which, unexplained, tended against him. I deem it but due to you to say that this evidence should be received with extreme caution. You can appreciate the strong temptation upon him to pervert the truth of the whole facts which would damage his case. Not only is he pecuniarily interested in the result of the trial, but his moral, social, and business standing for his future life is involved in your finding, and you could hardly expect from your knowledge of human nature, that a man in such straits would tell the truth, if the truth would injure his case. I do not say his testimony is incompetent, but it should be received with care, in view of the temptations which surround him. While the law has allowed him to become a witness in his own case, but has wisely left his credibility to be considered and passed upon by the jury, his testimony, like that of those who claim to have been his accomplices in the alleged crime, should be received with caution, and only believed when it is corroborated, or so consistent and coherent as to commend itself to your judgment from its own intrinsic probability.

I also deem it my duty to say to you that you are to treat this case solely on the evidence. The result of former trials which have been had involving these same questions should have no influence on your minds, for you and I only know this case in the light of its own evidence, and do not know what evidence or influence controlled the jury and the action of the court in the other case. It was impossible, in the nature of things, to keep from you the facts as to the result of the arson trial at Ottawa, but that verdict should not influence your minds in the decision of this case. It is your duty to decide this case upon the evidence which has been presented in the case, and not by the result of any other trial. Much of what is called the corroborating testimony, both of the plaintiff and the defendant, consists of coincidences, and the relations which they bear to the actions of the various actors in the transaction which you are investigating. The value of the coincidences depends upon their naturalness, and if you are satisfied that any apparent coincidence of time or place or event has been brought about by artificial means or factitious causes, for the purpose of using it as evidence, its value as corroborative evidence is not only impaired, but wholly destroyed. This remark is especially applicable to the proof in regard to the hotel register. That proof shows that, on the former trial of this case, the plaintiff, for the purpose of proving that he was not in this city at the time the Foster letter was written or mailed, offered in evidence the register of the Clifton House, at Ottawa, on which the name of the plaintiff appeared as a guest of that house on the evening of the 3d of September. If you are satisfied from the evidence that this entry of the plaintiff's name upon the register has been made since that time, for the purpose of manufacturing evidence in the plaintiff's behalf, it should weigh strongly against the plaintiff, because the attempt to put false testimony into the case justly causes doubt as to the justice of the case itself. A righteous cause needs no support of falsehood or perjury.

From the nature of this case, the evidence is voluminous and complicated, and in a remarkable degree contradictory. The law devolves upon you the task of compar-

ing, combining, and sifting the whole proof, and evolving all the material facts you consider as proven. The fact that the plaintiff's factory and contents were burned is undisputed, and it may, under the instruction I have given you, be taken as a conceded proposition that the defendant is liable upon the policy of insurance unless the defense set up has been established by the proof to your satisfaction. If the evidence in the case satisfies you by clear preponderance that the plaintiff did procure the burning of the building, or that he was privy to its destruction, for the purpose of defrauding the insurance companies, no matter who was his agent in the performance of the act, then your finding should be for the defendant. I do not mean to say that you must reconcile all the conflicting evidence on trivial and immaterial points, because that might be not only impossible, but unnecessary. The great central question is, does the proof satisfy you, to the degree I have stated, that the plaintiff procured the burning of the building in question? Has the evidence of Smith and Seigler on that point been so far corroborated by the facts and circumstances testified to by other witnesses as to satisfy your minds that they have told you the truth? If the evidence has produced this result upon your minds, then the defense is established, and you should find for the defendant. If that result is not accomplished by the proof, then the plaintiff is entitled to a verdict at your hands.

A single word, gentlemen, in regard to the character of some of the testimony in this case: For the purpose of showing that the hotel register had been altered and tampered with, the testimony of three distinguished microscopists has been introduced. They testified that they subjected the writing in question to an examination under a microscope of great magnifying power, and gave you the result of their investigation. The testimony comes within the class known as "scientific testimony." The witnesses are experts, and give in evidence the result of their scientific examination. This testimony is not to supersede your own senses, but only to aid and throw light upon the matter by which the defense claims that the unaided senses would not get at the truth. On argument, the plaintiff's counsel requested the jury to examine the writing through an ordinary magnifying glass. I did not permit this, because I think the glass comes within, to a certain extent, the same rule as the microscopic testimony, and should have been offered before the proof closed, so that any difference between the results disclosed by the two modes of examination might be explained by the defendant, if it chose to make an explanation, or if such were deemed necessary. It may be that a glass of comparatively small magnifying

power may disclose enough for the plaintiff's purpose, but not enough to meet the point made by the defendant, so that I only ruled that the magnifying glass would have been admissible if offered at the proper time, but that it could not be used upon the argument of the case. With regard to another class of testimony, which comes within, to some extent, the same rule,—that of experts in regard to handwriting,—you, as business men, have already, in your experience as jurors and about courts, come probably upon sufficient information on that subject, and need no special instructions from the court. In the nature of the case the only method of proving handwriting is by experts who have seen the party write, and who consider themselves sufficient judges of his handwriting to form a reliable opinion upon the subject, and that class of testimony is always received by the court as the only testimony establishing the fact of whether the handwriting is genuine or not, subject to the further rule, however, that it is competent, of course, for the plaintiff in this case to deny the signature or writing alleged to be his, and then it becomes a question of fact as to which you will believe, that of experts and persons familiar with his handwriting, or that of the plaintiff denying the handwriting, under all the circumstances of the case.

You have now, then, gentlemen of the jury for nearly three weeks sat patiently while the complicated testimony in this case has been exhibited and discussed before you. It now becomes your duty to carefully consider all this proof without prejudice, and with an earnest and determined effort to arrive not only at a verdict, but at a just verdict, under the evidence as given you from the witness stand, and the law as propounded from the bench. You should forget who are the parties in this case, and consider only what has been proven, and what is the law governing that proof. You should forget the circumstances or condition of either party. It makes no difference, for the purposes of this case, that the defendant is a moneyed corporation. I trust that in considering the features of the evidence you will treat this case as fairly, as I believe you will, as in a case submitted to you between two persons or individuals. With the consequences to either party you or I have nothing to do. The only question is, what facts are established by the proof, and what conclusion does the law deduce from these facts?

The form of your verdict will be, "We, the jury, find the issues for the plaintiff," or "the defendant," as you shall determine. If for the plaintiff, you will assess the damages at the amount of the policy, as the loss is admitted to have been total, with interest at the rate of six per cent. from the time it ought to have been paid, which is

sixty days after the time the proofs of loss were furnished to the company by the plaintiff. That date you will ascertain, when it becomes material, by reference to the proofs of loss produced. If you find the issues for the defendant, or, in other words, if you find that the defendant has established the issues relied upon, you will say, "We, the jury, find the issues for the defendant."

Verdict for the defendant.